IN THE UNITED STATES DISTRICT COURT FOR THE
SOUTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | | |
|---|---|---|
| CARMEN REED and KEITH REED, | * | |
| | * | |
| Plaintiffs, | * | |
| | * | |
| v. | * | Case No. 1:17-cv-00327 |
| | * | |
| CAPITAL RESORTS GROUP, LLC | * | |
| and  POLYNESIAN ACQUISITIAN | * | |
| PARTNERS, LLC, | * | |
| | * | |
| Defendants. | * | |

## NOTICE OF REMOVAL

Pursuant to 28 U.S.C. §§ 1441 and 1446, the defendants, Capital Resorts Group, LLC ("CRG") and Polynesian Acquisition Partners, LLC ("PAP") (collectively, the "Defendants"), hereby remove this action from the Circuit Court of Mobile County, Alabama, to the United States District Court for the Southern District of Alabama, Southern Division.  For its "short and plain statement of the grounds for removal" as required by 28 U.S.C. § 1441(a), Defendants respectfully state the following:

1.     Defendants are named defendants in the case styled *Carmen Reed and Keith Reed v. Capital Resorts Group, LLC and Polynesian Acquisition Partners, LLC*, which is pending in the Circuit Court of Mobile County, Alabama, and which bears Civil Action Number 02-CV-2016-902504.

2.     The plaintiffs, Carmen and Keith Reed ("Plaintiffs"), filed their original Complaint on November 23, 2016.  Defendants were served with process on December 1

and 5, 2016, respectively, and they answered the original Complaint on December 29, 2016.

3.      In their original Complaint, Plaintiffs sought a declaratory judgment and to invalidate a time-share agreement they entered into with Defendants because, according to Plaintiffs, Defendants were not licensed with the Alabama Real Estate Commission (the "AREC") to sell the time-share, and the time-share that Plaintiffs purchased was not registered with the AREC.  *See* Orig. Compl., attached hereto as "**Exhibit A**."

4.      Plaintiff's original Complaint was not removable because, although the parties were completely diverse, the amount in controversy was not satisfied because the amounts recoverable for the claims asserted in the original Complaint were strictly governed by statute and were less than $75,000, exclusive of interest and costs. Specifically, the statute under which these claims were asserted allows Plaintiffs to recover their out-of-pocket expenses associated with the transaction (*i.e.*, such as their down-payment), plus their reasonable attorneys' fees.  *See Ala. Code* § 34-27-62(b). Plaintiffs' out-of-pocket expenses associated with the transaction are $2,575 (*i.e.*, their down-payment), and their alleged attorneys' fees and costs, based upon a representation by their counsel, were $18,221.73 as of March of 2017.

5.      On June 30, 2017, Plaintiffs filed an Amended Complaint that included the two original claims and added six new fraud claims.  *See* Am. Compl., attached hereto as "**Exhibit B**."  In their Amended Complaint, Plaintiffs recite their original allegations and add that they were fraudulently induced into entering into the time-share transaction and signing its governing contracts because a salesperson allegedly misrepresented the

transaction's nature and purchase terms. *Id.*  In addition to seeking a declaratory judgment, to invalidate the time-share agreement, and to recover their out-of-pocket expenses and reasonable attorneys' fees, Plaintiffs also seek compensatory and punitive damages stemming from their fraud claims. *Id.*

6.   When Plaintiffs filed their Amended Complaint, the case became removable because, at that time, the amount in controversy was satisfied by virtue of adding the fraud claims, all of which seek compensatory and punitive damages. *Id.* Shortly after Plaintiffs filed their Amended Complaint, and as part of ongoing settlement negotiations, Plaintiffs' counsel informed Defendants' counsel that Plaintiffs realistically expect to recover $150,000 at trial now that the fraud claims have been added.[1] *See* J. Roberts Email to M. Jackson (July 10, 2017), attached hereto as "**Exhibit C**."

<u>**GROUNDS FOR REMOVAL & BASIS FOR FEDERAL JURISDICTION**</u>

7.   This action is removable to this Court pursuant to 28 U.S.C. § 1332, which provides federal district courts with "original jurisdiction of all civil actions where the matter in controversy exceeds the sum or value of $75,000, exclusive of interests and costs, and is between citizens of different States."  28 U.S.C. § 1332(a)(1).

**I.    The parties are citizens of different states.**

**a.    Plaintiffs are citizens of Alabama.**

8.   A person is deemed a "citizen" of the state in which he or she is domiciled. *See, e.g.*, *Newman-Green, Inc. v. Alfonzo-Larrain*, 490 U.S. 826 (1989); *McCormick v.*

---

[1] These settlement discussions are discussed in more detail below.

*Aderholt*, 293 F.3d 1254, 1257 (11th Cir. 2002) ("Citizenship is equivalent to 'domicile' for purposes of diversity jurisdiction.") (citations omitted).

9.    Plaintiffs are residents of Alabama.  Am. Compl. at ¶¶ 1 and 2.  Therefore, for purposes of diversity jurisdiction, Plaintiffs are deemed citizens of Alabama.

**b.    Defendants are citizens of Colorado, Delaware, Florida, Georgia, Kansas, North Carolina, Pennsylvania, and South Carolina.**

10.    For purposes of diversity jurisdiction, "a limited liability company is a citizen of any state of which a member of the company is a citizen." *Rolling Greens, MHP, L.P. v. Comcast SCH Holdings, L.L.C.*, 374 F.3d 1020, 1022-23 (11th Cir. 2004); *Whiddon Farms, Inc. v. Delta & Pine Land Co.*, 103 F. Supp. 2d 1310, 1311-13 (S.D. Ala. 2000).

11.    CRG is a limited liability company whose sole member is National Hospitality Group, LLC ("NHG"), which is also a limited liability company.  NHG's members are citizens of Colorado, Delaware, Florida, Georgia, Kansas, Missouri, North Carolina, Pennsylvania, and South Carolina.  Therefore, for purposes of diversity jurisdiction, CRG is a citizen of Colorado, Delaware, Florida, Georgia, Kansas, Missouri, North Carolina, Pennsylvania, and South Carolina.

12.    PAP is a limited liability company whose sole member is PAP Holding Company, LLC ("PAP Holding Company"), which is also a limited liability company. PAP Holding Company's members are citizens of Florida and South Carolina. Therefore, for purposes of diversity jurisdiction, PAP is a citizen of Florida and South Carolina.

13.     Complete diversity exists and, therefore, this Court has jurisdiction pursuant to 28 U.S.C. § 1332(a)(1) because Plaintiffs are citizens of Alabama and Defendants are citizens of Colorado, Delaware, Florida, Georgia, Kansas, Missouri, North Carolina, Pennsylvania, and South Carolina.

## II.     The amount in controversy is satisfied.

14.     Federal courts determine the sufficiency of the amount in controversy at the time of removal. *Pretka v. Kolter City Plaza, II, Inc.*, 608 F.3d 744, 751 (11th Cir. 2010).

15.     In the present case, Plaintiffs' Amended Complaint does not demand a specific amount of monetary damages. *See generally* Am. Compl. Instead, it seeks an unspecified amount of punitive and compensatory damages, as well as attorneys' fees and costs. *Id.*

16.     "Where, as here, the plaintiff has not pled a specific amount of damages, the removing defendant must prove by a preponderance of the evidence that the amount in controversy exceeds the jurisdictional amount." *Pretka*, 608 F.3d at 752. A removing defendant is not required "to prove the amount in controversy beyond all doubt or to banish all uncertainty about it." *Id.* at 754. Rather, the defendant need only show that "the amount in controversy more likely than not exceeds the … jurisdictional requirement." *Roe v. Michelin N.A., Inc.*, 613 F.3d 1058, 1061 (11th Cir. 2010) (quoting *Tapscott v. MS Dealer Serv. Corp.*, 77 F.3d 1353, 1357 (11th Cir. 1996)).[2]

---

[2] The Eleventh Circuit has noted that "preventing a district judge from acknowledging the value of the claim, merely because it is unspecified by the plaintiff, would force the court to abdicate its statutory right to hear the case." *Roe*, 2010 WL 3033802, slip op. at 13 (citing *Pretka*, 608 F.3d at 766).

17.    "The court should look to the complaint to determine the amount-in-controversy, but, if the amount is unavailable from the complaint, the court can look to the notice of removal and other 'evidence relevant to the amount in controversy at the time the case was removed.'"  *Pretka*, 608 F.3d at 754.  To satisfy its burden, the removing defendant may provide additional evidence, such as business records, affidavits and other documentation.  *Id.*

18.    Additionally, "courts may use their judicial experience and common sense in determining whether the case stated in a complaint meets federal jurisdictional requirements."  *Scott v. Ford Motor Co.*, 2015 U.S. Dist. LEXIS 14975 *6 (S.D. Ala. Jan. 20, 2015) (citing *Roe*, 613 F.3d at 1062).

      a.    **Plaintiffs' representation that they expect to recover $150,000 at trial is credible evidence proving the amount in controversy is satisfied.**

19.    District courts consider settlement correspondence between counsel as evidence regarding the amount in controversy.  *See, e.g.*, *Burns v. Windsor Ins. Co.*, 31 F.3d 1092, 1097 (11th Cir. 1994); *Jackson v. Select Portfolio Servicing, Inc.*, 651 F. Supp. 2d 1279, 1281 (S.D. Ala. 2009) ("A settlement offer can of course constitute an 'other paper' within the meaning of 28 U.S.C. § 1446(b).").

20.    Although a statement concerning the value of the case made in settlement correspondence will not alone establish the amount in controversy, "it counts for something." *Burns v. Windsor Ins. Co.*, 31 F.3d 1092, 1097 (11th Cir.1994).  And while settlement offers that lack any supporting information are generally "entitled to little weight," "settlement offers that provide specific information to support the plaintiff's

claim for damages ... are entitled to more weight" because they "suggest the plaintiff is offering a reasonable assessment of the value of his claim." *Jackson*, 651 F. Supp. 2d at 1281 (citing *Hall v. CSX Transp., Inc.*, No. 3:06-CV-37-WKW, 2006 U.S. Dist. LEXIS 83230, 2006 WL 3313682, at *3 n. 5 (M.D. Ala. Nov.14, 2006)).

21.    In the present case, Plaintiffs have communicated that they realistically expect to recover $150,000 at trial for the claims asserted in their Amended Complaint, and they have supported that position with detailed information about their claims:

a.    The parties have engaged in settlement discussions for several months.  Early discussions in late 2016 included verbal telephone discussions and written correspondence between Plaintiffs' counsel and Defendants' general counsel.  At this time, although the Amended Complaint had not yet been filed and the only claims pending were those asserted in the original Complaint (*i.e.*, no fraud claims or requests for punitive damages), Plaintiffs' demanded $50,000 to resolve their claims.  *See* Email from D. Cope to J. Roberts (Dec. 22, 2016), attached hereto as "**Exhibit D**."  In these communications, Plaintiffs' counsel discussed the strength of Plaintiffs' claims and provided details supporting them, and threatened to amend their complaint to add fraud claims if the case did not settle.  *Id.*; *see also* Letter from J. Roberts to D. Cope (Oct. 14, 2016), attached hereto as "**Exhibit E**" (asserting that Defendants "made material misrepresentations," "ignored our clients' attempts to correct this issue," and are "liable to our clients for breach of contract, fraud and unconscionability").

b.      Verbal and written settlement discussions then continued between Plaintiffs' counsel and Defendants' undersigned counsel.  During this time, although the Amended Complaint had not yet been filed and the only claims pending were those asserted in the original Complaint (*i.e.*, no fraud claims or requests for punitive damages), Plaintiffs continued demanding $50,000[3] and threatening to amend their complaint to add fraud claims if the case did not settle.  In these communications, Plaintiffs' counsel discussed the strength of Plaintiffs' claims, including the threatened fraud claims, and provided details supporting them.  *See* Email from J. Roberts to M. Jackson, attached hereto as "**Exhibit F**" (June 2, 2017); Email from J. Roberts to M. Jackson (June 7, 2017), attached hereto as "**Exhibit G.**"  On June 2, 2017, Plaintiffs' counsel emailed Defendants' counsel and attached a draft copy of Plaintiffs' Amended Complaint, threatened to file it, and provided additional detail supporting Plaintiffs' claims, including the threatened fraud claims.[4]  *See* **Exhibit F**.  Plaintiffs' counsel provided the draft copy of the Amended Complaint for the purpose of providing Defendants' counsel with additional information and detailed factual allegations supporting Plaintiffs' claims.  *Id.* The draft Amended Complaint contained 77 paragraphs and detailed allegations of fraud and other misconduct, and sought certain non-monetary and monetary relief, including compensatory damages, punitive damages, attorneys' fees, and costs.  *Id.*  In support of

---

[3] Plaintiffs eventually lowered their demand to $45,000.  But at that time, the Amended Complaint had not yet been filed and the only claims pending were those asserted in the original Complaint (*i.e.*, no fraud claims).

[4] This draft Amended Complaint appears to be the exact same Amended Complaint that was eventually filed on June 30, 2017.

their fraud claims damages, Plaintiffs contended that they were fraudulently induced into entering into a time-share transaction, and were damaged by being "inundated with letters from Defendants claiming past due debts and calls from debt collectors," which has caused Plaintiffs to suffer "mental anguish and emotional harm." *Id.* Plaintiffs elaborated on Defendants' alleged "fraudulent behavior" and explained that Plaintiffs were "manipulated" because Defendants "built a level of trust with them, and then totally betrayed that trust." **Exhibit F**. Plaintiffs further asserted that they "are entitled to damages for the mental anguish and stress associated with [Defendants]' fraudulent conduct," that said damages "are increasing" because Plaintiffs "continue to receive collections calls from [Defendants] on an almost weekly basis," and that Plaintiffs "are entitled to punitive damages under Alabama law." *See* **Exhibit G**.

c.      Plaintiffs filed their Amended Complaint on June 30, 2017. *See* **Exhibit B**. The Amended Complaint changed the value of this case significantly because, in addition to asserting the two claims included in the original Complaint, it also asserted six additional fraud claims and requested compensatory and punitive damages for each of them. *Id.*

d.      Shortly after filing the Amended Complaint, while settlement negotiations were still ongoing, Plaintiffs' counsel sent Defendants' counsel an email stating that, as a result of filing the Amended Complaint and adding the new fraud claims, Plaintiffs realistically expected to recover $150,000 at trial "based on pattern and practice evidence." **Exhibit C**. Plaintiffs' counsel's reference to "pattern and practice evidence" was not mere "puffery" because Plaintiffs had recently issued third-party

subpoenas in the state court action seeking documents evidencing other time-share sales activities by Defendants.  *See* **Exhibit H**.

22.     In sum, Plaintiffs made settlement demands of $50,000 before filing the Amended Complaint that included six fraud claims and requested punitive damages, and then, after filing the Amended Complaint, Plaintiffs stated that they expect to recover $150,000 at trial for the claims asserted in the Amended Complaint.  Given the nature of Plaintiffs' claims and the fact that they're not exactly easy to quantify,[5] Plaintiffs' counsel provided Defendants' counsel with virtually all the information he could to support Plaintiffs' position that they could realistically recover $150,000 at trial, including legal argument, verbal and written explanations and commentary, a draft copy of the Amended Complaint that included additional information and detailed allegations about the claims, additional information regarding the facts and damages, and the type of evidence that Plaintiffs believe would justify an award of $150,000.

23.     Plaintiffs' counsel's representation that Plaintiffs realistically expected to recover $150,000 at trial, coupled with all of his supporting information and detail, should be given significant weight because it constitutes "a reasonable assessment of the value of his claim."  *Jackson*, 651 F. Supp. 2d at 1281.  Considering this representation alongside the Court's "judicial experience and common sense," this Court should find the amount is controversy is satisfied.

---

[5] While some claims can be relatively easy to quantify, like personal injury claims accompanied by medical and billing records, fraud claims are not because they're oftentimes more fact-driven and cannot be broken down into a clear itemization of damages.  This is even more true when the damages are based on mental anguish.

**b.      The fact that Plaintiffs seek punitive damages is further evidence proving the amount in controversy is satisfied.**

24.      "Punitive damages must be considered when determining the jurisdictional amount in controversy in diversity cases." *Rae v. Perry*, 392 Fed. App'x 753, 755 (11th Cir. 2010); *see also Benandi*, 2011 WL 5077403 at *4 (finding it "appropriate to consider claim for punitive damages when determining the jurisdictional amount in controversy"); *Jones Welding Co.*, 2013 WL 3776324 at *5 (considering plaintiff's claims for punitive damages in determining the amount in controversy); *Renfroe v. Allstate Property & Cas. Ins. Co.*, 2010 WL 4117038, *4 (S.D. Ala., Sept. 23, 2010) (holding it was appropriate to consider claim for punitive damages when determining the jurisdictional amount in controversy).

25.      In the present case, Plaintiffs' Amended Complaint seeks punitive damages for each of their six fraud claims. *See generally* Am. Compl.  In support of these claims, Plaintiffs' allege that, as a result of the Defendants' fraud, they "have been inundated with letters from Defendants claiming past due debts and calls from debt collectors," and have "suffered mental anguish and emotional trauma as a proximate result of Defendants' wrongful conduct." *Id.* at ¶ 36.  Plaintiffs have further explained that they "are entitled to damages for the mental anguish and stress associated with [Defendants]' fraudulent conduct," that said damages "are increasing" because Plaintiffs "continue to receive collections calls from [Defendants] on an almost weekly basis," and that Plaintiffs "are entitled to punitive damages under Alabama law."  *See* **Exhibit G**.  Plaintiffs realistically expect to recover $150,000 at trial "based on pattern and practice evidence" relating to

the fraud claims.  **Exhibit C**.  Therefore, this Court should consider Plaintiffs' request for punitive damages as additional evidence that Plaintiffs' claims satisfy the amount in controversy.

> **c.     The Amended Complaint's allegations, claims, and damages demands further prove that the amount in controversy is satisfied.**

26.     In addition to certain non-monetary relief, the Amended Complaint seeks monetary damages consisting of compensatory damages, punitive damages, attorneys' fees, and costs.  *See generally* **Exhibit B**.

a.     <u>Compensatory and Punitive Damages</u>.  The Amended Complaint seeks compensatory damages in the amount of $2,575 for all claims, and punitive damages for the six fraud claims.  *See generally* **Exhibit B**.  As for the fraud claims, Plaintiffs' allege that, as a result of the Defendants' fraud, they "have been inundated with letters from Defendants claiming past due debts and calls from debt collectors," and have "suffered mental anguish and emotional trauma as a proximate result of Defendants' wrongful conduct."  *Id.* at ¶ 36.  Plaintiffs have further explained that they "are entitled to damages for the mental anguish and stress associated with [Defendants]' fraudulent conduct," that said damages "are increasing" because Plaintiffs "continue to receive collections calls from [Defendants] on an almost weekly basis," and that Plaintiffs "are entitled to punitive damages under Alabama law."  *See* **Exhibit G**.  Plaintiffs have further stated that they realistically expected to recover $150,000 at trial "based on pattern and practice evidence."  **Exhibit C**.

b.    <u>Attorneys' Fees and Costs</u>.  Since Count One is based on *Alabama Code* § 34-27-62, which permits recovery of attorneys' fees, attorneys' fees and costs can be considered for amount in controversy purposes.[6]  According to Plaintiffs' counsel, Plaintiffs' claimed attorneys' fees and costs were $18,221.73 as of the end of February 2017.  Now that almost five additional months have passed since February 2017, during which Plaintiffs' counsel have performed additional work (such as engaging in settlement discussions and preparing the Amended Complaint, non-party subpoenas, and other motions, etc.), Plaintiffs' claimed attorneys' fees and costs are likely now much higher, and they will continue to increase significantly as this litigation progresses.  Since Plaintiffs' claimed attorneys' fees and costs were $18,221.73 as of the end of February 2017 (when, presumably, very little work had been had been done as of that time), that suggests that Plaintiffs' counsel have very high rates and are working more than necessary and, therefore, their claimed attorneys' fees could be twice as high now and might, by themselves, exceed $75,000 well before this litigation concludes.[7]

27.    This Court should use its "judicial experience and common sense" and find that the amount in controversy is satisfied in light of the allegations and damages requested.

---

[6] *Federated Mut. Ins. Co. v. McKinnon Motors, LLC*, 329 F. 3d 805, 808 n. 4 (11th Cir. 2003) ("The general rule is that attorneys' fees do not count towards the amount in controversy unless they are allowed for by statute or contract.").

[7] Defendants dispute the amount of the Plaintiffs' claimed attorneys' fees and costs and reserve the right to contest them in this litigation.

28.     Based on the foregoing, this Court should find the amount in controversy is satisfied because it exceeds the sum or value of $75,000, exclusive of interests and costs. 28 U.S.C. § 1332(a)(1).

29.     In the alternative, if this Court has any doubt as to whether the amount in controversy is satisfied, then Defendants hereby requests this Court require Plaintiffs to answer admissions regarding the amount in controversy or allow Defendants to conduct discovery limited to issues regarding the amount in controversy.[8]

## REMOVAL PURSUANT TO 28 U.S.C. §§ 1441(A)-(C) AND 1446(A)-(B)

30.     Removal is proper pursuant to 28 U.S.C. § 1441(b), which permits removal if the Court has diversity jurisdiction under § 1332(a).

31.     Venue is proper in this Court pursuant to 28 U.S.C. §§ 1441(a) and 1446(a) because this Court is the United States District Court for the district and division within which the state court action is pending.

32.     Removal is timely pursuant to 28 U.S.C. §§ 1446(b) because Defendants were deemed served with process when the Amended Complaint was filed *via* AlaCourt on June 30, 2017.

---

[8] Such limited discovery is permitted to determine the amount in controversy.  *See, e.g.*, *Lasusa v. Lake Michigan Trans-Lake Shortcut, Inc.*, 113 F. Supp. 2d 1306 (E.D. Wis. 2000) (allowing limited and expedited discovery for the purpose of ascertaining the amount in controversy); *Steele v. Underwriters Adjusting Co.*, 649 F. Supp. 1414 (M.D. Ala. 1986) (despite plaintiff's statement in remand motion that the amount in controversy was less than the jurisdictional minimum, court allowed discovery for defendant to inquire about the damages plaintiff sought); *Sunrise Mills (MLP) L.P. v. Adams*, 688 So. 2d 464 D.C.A. 1997) (noting that, under federal law, "[a] party has a right to discovery for removal purposes as to the amount in controversy").

<u>**EFFECTUATION OF REMOVAL & APPLICABLE PROCEDURAL REQUIREMENTS**</u>

33.     Pursuant to 28 U.S.C. § 1446(a), Defendants hereby attach a copy of all process, pleadings, and orders served on Defendants in the state court case, as well as copies of all documents on file in the record of the state court case that are within Defendants' possession, custody, and control.  *See* **Exhibit I**.

34.     Pursuant to 28 U.S.C. § 1446(d), Defendants are providing written notice of the filing of this Notice of Removal to all adverse parties.

35.     The allegations contained in this Notice of Removal were true at the time the First Amended Complaint was filed in the state court action, and said allegations remain true as of the date of filing this Notice of Removal.

36.     The undersigned counsel hereby certifies that a notice of filing removal, along with a copy of this Notice of Removal, will be filed promptly with the Circuit Court of Mobile County, Alabama.

WHEREFORE, Defendants hereby remove this action to the United States District Court for the Southern District of Alabama, Southern Division.

Respectfully submitted,

*/s/ Matthew R. Jackson*
MATTHEW R. JACKSON (JACKM7882)
*Attorney for Defendants*

<u>**OF COUNSEL**</u>:
ADAMS AND REESE LLP
11 N. Water Street, Suite 23200
Mobile, Alabama 36602
(251) 433-3234 Main
(251) 438-7733 Fax
matt.jackson@arlaw.com

## **<u>CERTIFICATE OF SERVICE</u>**

I hereby certify that, on **July 19th, 2017**, I served a copy of the foregoing pleading upon all counsel of record via U.S. mail, first class postage prepaid, and/or electronically with the Clerk of Court using the CM/ECF System which will send notification of such filing to the following:

Harry V. Satterwhite, Esq.
Jon D. Roberts, Esq.
SATTERWHITE LAW FIRM, LLC
1325 Dauphin Street
Mobile, Alabama 36604

*/s/ Matthew R. Jackson*
OF COUNSEL